UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
TEODOR STROE,

                  Plaintiff,                       **MEMORANDUM & ORDER**

        - against -                              02 CV 1036 (RRM)(LB)

THE CITY OF NEW YORK, et al.,

                  Defendants.
-------------------------------------------------X
MAUSKOPF, United States District Judge.

Pursuant to 42 U.S.C. § 1983, pro se Plaintiff Teodor Stroe brings excessive force claims[1] against Defendant City of New York and individual police officers Albert Vicinanza (Ret.), Eugene Durante, Santo Russo (Ret.) and Sergeant Mark Elbaum (Ret.). Individual Defendants Vicinanza, Durante, Russo and Elbaum (collectively "Defendants") now move for summary judgment.[2] For the reasons below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Stroe's excessive force claim, the only claim to survive summary dismissal of his various omnibus complaints, centers on his November 28, 2000 arrest. The Court assumes the Parties' familiarity with the underlying facts and procedural history of the case.

Plaintiff alleges that on or about November 28, 2000, he was arrested for assaulting a subway train crew-member. Based on his deposition testimony and other materials filed in opposition to this motion, Stroe's arrest was effectuated on the elevated platform of the F subway

---

[1] On September 2, 2005, our predecessor Court (Korman, J.) granted summary judgment as to all claims except for the cause of action based on the use of excessive force in effectuating Plaintiff's arrest.

[2] The instant motion does not seek summary judgment as to Defendants City of New York or Police Officer John Finley.

train at 18th Street, Brooklyn, New York by two New York City police officers, one of whom allegedly handcuffed Stroe behind his back at that time, thereby physically placing him in custody. Stroe alleges that at some point, while he was standing on the platform, one of the officers "turned" his handcuffed wrists to the point where he fell to his knees. Stroe alleges that he was then dragged down the platform stairs to a locked room, pushed inside so that he fell face down onto the pavement, and was repeatedly beaten and kicked in the ribs and stomach by these same two officers while curled up, handcuffed, on the floor.

Stroe brings excessive force claims against a number of New York City Police Department (the "NYPD") officers pursuant to 28 U.S.C. § 1983. Seeking summary judgment, each of the individual Defendants submit affidavits describing their involvement (or lack thereof) in effectuating Stroe's November 28, 2000 arrest, together with contemporaneous records, including NYPD "memo book" logs, arrest paperwork, medical treatment forms, and other documents, in further support.[3] The admissibility and authenticity of these submissions, each of

---

[3] The following are appended as exhibits to the Smith Decl.: Exh. A: Complaint, dated Feb. 13, 2002, with plaintiff's addendum, dated April 22, 2003, and additional annexed documents; Exh. B: excerpted transcript of deposition of Teodor Stroe, dated Nov. 14, 2006 (the "Stroe Dep."), with plaintiff's corrections thereto; Exh. C: Affidavit of Albert Vicinanza, dated Sept. 25, 2007; Exh. D (the "Vicinanza Aff."): Affidavit of Eugene Durante, dated Sept. 19, 2007 (the "Durante Aff."); Exh. E: Affidavit of Mark Elbaum, dated Sept. 26, 2007 (the "Elbaum Aff."); Exh. F: Affidavit of Santo Russo, dated Oct. 1, 2007 (the "Russo Aff."); Exh. G: NYPD Complaint Report, signed by Officers Vicinanza and Sgt. Elbaum (the "NYPD Complaint Report"); Exh. H: NYPD Arrest Report; Exh. I: Kings County Crim. Ct. Complaint, dated November 29, 2000, related to Plaintiff's arrest, sight by Officer John Finley; Exh. J: NYPD Medical Treatment of Prisoner form related to plaintiff's arrest (the "NYPD Med. Treatment Form"); Exh. K: Kings County Crim. Ct. appearance record for Teodor Stroe.

which is appended to Declaration of Assistant Corporation Counsel, Jordan M. Smith, sworn to October 10, 2007 (the "Smith Decl."), are not contested.[4]

## DISCUSSION

### A. Standard of Review

Rule 56(c) requires summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555 (2d Cir. 1994). The moving party has the burden of clearly establishing the absence of any triable issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Pointing to the absence of necessary evidence can satisfy the movant's burden on summary judgment. See id. at 325; Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Once the moving party offers specific evidence or identifies the lack of evidence to support his or her motion, the burden shifts to the opposing party to offer some evidence beyond the initial pleadings. See Celotex, 477 U.S. at 324.

To survive summary judgment, the nonmoving party must identify specific evidence that shows a genuine issue of material fact, not simply any factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Paragon Podiatry Lab., Inc. v. KLM Laboratories,

---

[4] Although Stroe now proceeds pro se, he was initially represented by counsel in commencing this action on or about February 13, 2002. In February 2003, Stroe moved to "dismiss" his counsel, which application was granted on March 17, 2003 (Pollack, J.). Thereafter, Stroe interposed a series of amended complaints. Relevant to the instant motion, Stroe's Third Amended Complaint alleges a number of incoherent and patently frivolous claims, including inter alia, that Corporation Counsel is part of a "Mafia" conspiracy to "kill" Stroe and to "enslave" his children for purposes of "trading them" for money. Stroe's Opposition papers to the instant motion for Summary Judgment are similarly replete with incoherent allegations. Defendants have opted not to interpose a Reply, and rely instead on their initial moving papers for purpose of dismissing the sole surviving excessive force claim against certain of the defendant police officers. As such, the instant motion is now ripe for decision.

3

Inc., 984 F.2d 1182, 1184-85 (2d Cir. 1993). All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, see Transco, 38 F.3d at 555, and summary judgment will be precluded "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Cas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1560 (2d Cir. 1991).

In the context of a § 1983 action, as here, a defendant's personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages. See Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991). To survive summary judgment, plaintiff must allege "a tangible connection" between defendant's acts and the injuries allegedly suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Where there is evidence sufficient to support the requisite personal involvement, summary judgment must be denied and any dispute is a question of fact for the jury. See Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Conversely, defendant's motion for summary judgment must be granted in the absence of such evidence. See, e.g., Universal Calvary Church v. City of New York, No. 96-cv-4606, et al., 2000 WL 1538019, at *16-17 (S.D.N.Y. Oct. 17, 2000).

### B. Summary Judgment as to the Individual Police Officers

As an initial matter, the Court notes that Stroe's remaining excessive force claims derive solely from events that took place at the 18th Street subway station, and not during any other phase of his arrest processing at the police station or thereafter. In their affidavits, all of the officers deny using or seeing other officers use excessive force against Stroe. Following the close of discovery in this matter, Stroe remained unable to personally identify any of the officers complained of. However, in his deposition and other supporting materials, Stroe indicates that the two uniformed officers who initially responded to subway platform placed him under arrest

and took him from the platform. As will be discussed more fully below, it is undisputed, based on affidavits and other supporting documents provided by defendants, that Police Officer John Finley, who is not a party to this motion, and Police Officer Santo Russo, who is, were the only two officers who were on the subway platform during the encounter with Stroe.

In deciding this motion, the Court views all of the evidence in the light most favorable to the Plaintiff. For the reasons below, Stroe's claims as to the participation of Defendants Elbaum, Vicinanza and Durante are dismissed. However, Defendant Russo's undisputed participation in Stroe's physical arrest raises triable issues of fact, thus precluding summary judgment as to him.

i. Sgt. Elbaum

Claims against Sgt. Elbaum are dismissed. Although Elbaum did respond to the 18th Street subway station, it is undisputed that he arrived only after Stroe had been arrested and taken into custody by other officers, and the physical confrontation had ended. (Elbaum Aff. ¶ 9). That Elbaum was not present on the 18th Street subway platform at any time during the encounter with Stroe is corroborated by Officer Russo's affidavit testimony (Russo Aff. ¶¶ 10-11), and is consistent with Stroe's version of events. (Stroe Dep. 79). From a review of the record, Stroe has no independent recollection of Elbaum's participation in the arrest, and he concedes in his testimony that his claims against Elbaum are based solely on the fact that Elbaum's signature appears on certain paperwork relating to the custody of Stroe's children, who were with Stroe at the time of his arrest. (Id.). As Stroe fails to allege facts demonstrating the requisite personal involvement by Elbaum, the excessive force claim against Sgt. Elbaum is dismissed.

ii. Police Officer Vicinanza

The undisputed facts indicate that Police Office Vicinanza was not present at the 18th

Street subway station during on November 28, 2000, and was not actually scheduled for, and not actually on, duty at the time of Stroe's arrest. Vicinanza testified that at approximately 7 p.m., when he arrived at the Transit District 34 station house for his scheduled tour of duty, Stroe had already been placed into custody, and Vicinanza was tasked only with completing paperwork related to that arrest at the stationhouse. (Vicinanza Aff. ¶¶ 5-7, 9). Stroe presents no evidence to dispute this, and again testified that his claims against Officer Vicinanza stem from the officer's signature on arrest paperwork.[5] As there is no evidence that Vicinanza was personally involved in Stroe's physical arrest at the 18th Street subway station, the excessive force claim against him is dismissed.

### iii. Police Officer Durante

Similarly, the undisputed facts establish that Durante was not present at the 18th Street subway station at the time of Stroe's arrest. From a review of that Record, it appears that Durante's first and only interaction with Stroe came on December 2, 2000, when Durante was assigned to escort Stroe from the hospital, where Stroe was taken following his arrest, through the arraignment process. (Durante Aff. ¶¶ 10-12, 15, see appended memo book entries; Stroe Dep. 76-77; Smith Decl., Exh. J: NYPD Med. Treatment Form). Accordingly, police paperwork lists Durante as the designated "escort officer." (Stroe Dep. 77). Aside from that limited duty, which is not the subject of this lawsuit, Durante had no interaction with Stroe. As he testified, Stroe's only basis for bringing a claim against Durante is the result of his review of paperwork bearing Durante's name. (Id.) Stroe's allegations in no way controvert the undisputed fact that

---

[5] With respect to Vicinanza's alleged involvement in his arrest, Stroe testified as follows:
Q. ... how do you know it was Durante and Vicinanza who kicked you and not some other officers?
A. Because they were at – they were from the 70th Precinct. That's why I'm suing them.
\*\*\*\*
A. ... I don't remember them, but that is what it says on the paper (indicating).
Q. You are pointing to a document that shows that Officer Vicinanza was the arresting officer, is that right?
A. Yes. (Stroe Dep. 79-80).

Durante had any involvement in any physical interaction with Stroe at the time of Stroe's arrest or the conduct underlying his excessive force claim. As such, the excessive force claim against Durante is dismissed.

### iv. Police Officer Russo

As noted above, Defendants admit that Police Officers John Finley and Santo Russo were, in fact, the officers who reported to the scene and who physically took Stroe into custody on the 18th Street subway platform (Russo Aff. ¶ 6). Russo testified that it was Officer Finely who placed the handcuffs on Stroe. (Id. ¶ 8). Among other things, Stroe testified that while on the platform, one of the two officers turned his handcuffs to the point where Stroe fell to his knees. (Stroe Dep. 49). In addition, Stroe testified that he was dragged from the platform "like a dead dog" by the same two officers, shoved into a locked room, pushed to the ground, beaten, and kicked. (Id. 51-53). Although Russo denies the use of force in effectuating Stroe's arrest (id. at ¶ 9), Russo's admitted presence and involvement as one of two initial-responding officers at the time and place of Stroe's arrest raise sufficient triable issues of fact in light that warrant denial of summary judgment as to Russo.

## CONCLUSION

For the reasons set forth above, Defendant Russo's motion for summary judgment is DENIED. Summary judgment as to Defendants Elbaum, Durante and Vicinanza is GRANTED, and the cases against these three defendants are dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 26, 2008

_____
ROSLYNN R. MAUSKOPF
United States District Judge